4-8915                    222 S. W. 2d 809

Opinion delivered June 27, 1949.

Rehearing denied October 3, 1949.

*Warren E. Wood* and *Griffin Smith, Jr.,* for appellant.

*Digby & Tanner,* for appellee.

ED. F. McFADDIN, Justice. This suit involves a building contract. On March 30, 1948, N. C. Withrow, Jr. (hereinafter called owner) entered into a contract with O. A. Wright (hereinafter called contractor) for the construction of a residence. Work began on April 1, 1948, and continued until some time in July, 1948, when the contractor left the job after the architect refused to allow the interior of the house to be plastered. On October 1, 1948, the owner filed this suit against the contractor, claiming damages in the sum of $4,564.01, and

seeking an injunction to prevent the contractor from filing a lien on the property. The contractor counter-claimed for $4,901.51, as the balance on the contract. Trial in the chancery court resulted in a decree awarding the contractor (1) a judgment for $4,652.81 and (2) a lien on the property for the payment of said judgment. To reverse that decree, there is this appeal.

The Contract provided, *inter alia:*

"The Contractor shall furnish all of the materials and perform all of the work shown on the Drawings and described in the Specifications entitled two (2) bedroom residence, as per plans and Specifications prepared by Nevil C. Withrow, Sr., with exceptions as noted on proposal dated February 6, 1948."

It is admitted by all parties that the contractor was not "to furnish all of the materials", even though so stated in the contract, since the Specifications and also the Proposal varied the quoted language. Section 6 of the Specifications, even as deleted when offered in evidence, showed the materials to be furnished by the owner to be: "Metal frames and trim; copper coat paper, thresholds; sliding door, tracks and hardware; aluminum sills; waterproofing and dampproofing; cement floor colors; plate glass settings; aluminum windows and screens; Zonolite concrete and plaster aggregate."

Furthermore, the Proposal of February 6, 1948, showed the following items to be furnished by the owner: "Metal door frames and trim; copper coat paper; thresholds; sliding door tracks and hardware; aluminum sills; waterproofing and dampproofing; cement floor colors; plate glass; window glass, glazing and setting; aluminum window trim and screens; Zonolite concrete and plaster aggregate; weather stripping; window cleaning; building paper; all cabinets; mirrors; fireplace dampers; insulation material; Parkay flooring and labor; electric wiring, fixtures and labor; heating system; landscaping."

The plans, Specifications and drawings were frequently changed by the architect, and during the course of the

work the owner paid the contractor a total of $3,854.15 on the contract and extras. From the inception of the work until the contractor left the job some time in July, there were ever recurrent changes in plans and also constant strife between the owner and architect on the one side, and the contractor and his workers on the other. The testimony is in the sharpest conflict as to who was at fault.

The architect is the father of the owner, and seems to have taken complete charge and acted both as architect and as owner in the place of his son, N. C. Withrow, Jr. At one time the owner asked one of the workmen why something was being done which was a change in the plans; and when the workman advised the owner that Mr. Withrow, Sr., had ordered the change, then the owner replied: "Well, don't ever ask me another thing about the job. I am washing my hands of it. If he is going to handle it, let him handle it." In July when the contractor was ready to commence plastering the interior, Mr. Withrow, Sr. forbade the plastering, and thereupon the contractor left the job and the owner had the residence completed by another builder. Appellants urge six assignments for reversal.

Assignment number one relates to some language of the trial court regarding the Proposal not being a part of the contract. We fail to see how the appellant was prejudiced in any wise by this statement of the trial court, because the Proposal lists many more items to be furnished by the owner than were carried forward into the Specifications. We have previously detailed these items. Including the Proposal as a part of the Contract does not improve the case for the appellant.

Assignments numbers two, three and six relate, ultimately, to the fact that the Court accepted the contractor's version of the facts, rather than the owner's, and rendered judgment against the owner for $4,652.81. As previously stated, the evidence was in the sharpest dispute; and to review the testimony of each witness would serve no useful purpose. We cannot say that the Chancery Court's decree is contrary to the preponder-

ance of the evidence as regards the amount of the judgment.

Assignment number four complains of that portion of the Court's language in the decree which recites: " . . . that the architect was prejudicial, biased and partial in his supervision, criticism and rejection of the construction; . . ." While the quoted language may appear to be harsh, yet it must be remembered that the architect is the father of the owner, and it is but natural that a father would honestly view any transaction in a light more favorable to his son than to a third party. From a reading of the entire evidence we understand the language of the trial court to mean that N. C. Withrow, Sr. acted more as the father of N. C. Withrow, Jr., than as an impartial architect. Such a statement was not intended as a reflection on Mr. Withrow, Sr.; but as a statement of facts borne out by the evidence.

Appellants' assignment number five relates to that portion of the decree which awarded the contractor a lien on the building and land for the *full* amount of his judgment; and the appellants are partially correct in this assignment. There was no lien agreed to in the Contract between the parties, so the only lien the contractor could possibly claim is one arising either by equitable subrogation or by statute. What we will now say concerning the statute gives the contractor all of the relief he could claim under equitable subrogation—so we need not decide whether such doctrine is applicable.

Our statutes (§§ 8865, *et seq.*, Pope's Digest, and §§ 51-601, *et seq.*, Ark. Stats. of 1947) give a lien for work done or materials furnished. In Shaw v. Rackensack Apt. Corp., 174 Ark. 492, 295 S. W. 966,[1] we held that the contractor who furnished materials and paid labor bills was entitled to a lien for such amounts; and when the contract required the contractor to furnish all labor and materials under his contract, he was entitled to a lien for the balance due him under the contract when he had performed it. In Cook v. Moore, 152 Ark. 590, 239

[1] In the later case of Halbert & Son v. Baker, 176 Ark. 971, 4 S. W. 2d 1 we reaffirmed the fact that a contractor was entitled to a lien in the circumstances there shown.

S. W. 750, we held that the contractor was not entitled to a lien for his profits over and above the bills for labor and materials. In the application of these holdings to the case at bar, it is evident that Wright is entitled to a lien for the amounts he paid for labor and materials that actually went into the construction of the building; but he is not entitled to a lien for his profits. From the evidence before us, it is impossible to determine how much Wright actually paid for labor and materials that went into the construction of the building. He testified that he had paid all bills incurred by him, except one; but the amounts so paid were not segregated from the overhead profit, and in several instances, the exhibits indicate "20% added."

We therefore hold that under our statutes Wright is entitled only to a lien for the amounts he paid for labor and materials that actually went into the construction of the building. This part of the cause must be remanded for such amount to be determined.

In all respects, except as to the lien question, the decree of the Chancery Court is affirmed. As to the lien question, the decree is in part reversed, and the cause remanded for further proceedings not inconsistent with this opinion. All costs are taxed against the appellants.

Griffin Smith, C. J., not participating.